# Golson *v.* The State.

*Indictment for Murder.*

1. *Immaterial evidence; properly excluded.*—Where questions are propounded to a witness the answers to which would be immaterial, it is no error to refuse to allow the questions to be answered.

2. *Opinion of witness, when not allowed.*—Where the inquiry is whether shots were fired through the door of a house from the inside or outside of the house, and the door is exhibited to the jury, it is no error to refuse the opinion of a witness who, not being an expert, knows no more about the matter under inquiry than the persons composing the jury.

3. *Motion to exclude evidence; when properly overruled.*—Where the State in a criminal case introduces evidence which is competent, and so far as appears there exists no reasons against its introduction or for its exclusion, and the defendant moves to exclude it without stating any grounds therefor, the motion is properly overruled.

4. *Requested charge in homicide; when properly refused.*—A charge requested by the defendant in a case of homicide which ignores the question of fault on defendant's part in bringing on the difficulty, is properly refused.

5. *Confession; what warning not necessary.*—It is not necessary to the competency of a confession of the defendant in a criminal case, that the defendant should have been warned that his confession could be used against him at his trial.

6. *Charges; when two on same paper the word "refused" applies to both.*—Where two or more special charges are written on the same piece of paper and the presiding judge writes "refused" across the paper and signs his name thereto, each charge must be good or the exception fails.

7. *Murder in second degree; deliberation or premeditation not necessary in.*—Where the indictment in a criminal case charges murder in the first degree, the defendant may be con-

[Golson v. The State.]

victed of murder in the first or second degree, and he may be convicted of murder in the second degree notwithstanding the jury may find the qualities of deliberation or premeditation to be wanting.

APPEAL from Jefferson Criminal Court.

Tried before Hon. S. E. GREENE.

The facts are fully stated in the opinion. The charges which it is necessary to notice are the following asked by the defendant and refused:

1. "Every one charged with the commission of an offense against the law is presumed innocent until his guilt is established; and the evidence to induce conviction should not be a mere preponderance of probabilities but should be so convincing as to lead the mind to the conclusion that the accused cannot be guiltless."

3. "If from the facts and circumstances in this case the jury believe that the defendant whilst laboring under the influence of fright or excitement shot and killed the deceased then they cannot convict the defendant.

5 and 6 are predicated on the right of a person to defend himself in his own house without retreating.

10. "If from the evidence and circumstances of this case the jury believe that the pistol shot wound in the neck of the deceased was the wound that caused his death, and have a reasonable doubt as to whether the defendant inflicted said wound, then the jury should give the defendant the benefit of that doubt and find him not guilty of either murder or manslaughter in any degree."

11. "If the jury believe from the evidence that the defendant did slay the deceased, yet if they find wanting even one of the qualities of wilfullness, deliberation, malice and premeditation, they cannot find guilty of murder as charged in the indictment."

J. & J. H. MONTGOMERY, HAMET JONES and F. I. MONKS, for appellant.—(1). The court erred in refusing charge 2 requested by defendant.—50 Ala. 117. (2). The court erred in refusing charges 5 and 6 requested by defendant.—96 Ala. 24.

CHARLES G. BROWN, Attorney-General, for the State. (1.) Charge 1 requested by defendant has been held

bad in *Webb v. State,* 106 Ala. 53; *Thomas v. State,* 107 Ala. 15; *Bonner v. State,* 107 Ala. 97. (2). Charges 5 and 6 being written on one piece of paper constitute one ruling, but each as bad in ignoring the fault of defendant in bringing on the difficulty.—*Horn v. State,* 98 Ala. 30. (3). Charges 7, 8, and 9 were written in the same way, and each is defective; charge 7 is argumentative and invades the province of the jury.—*Burton v. State,* 107 Ala. 130. (4). Charges 10 and 11 were also asked together and charge 11 manifestly asserts an incorrect proposition of law.

HARALSON, J.—1. The deceased, Robert Warnock, who was chief deputy sheriff, and W. I. Lowe and J. L. Barker, two other deputies of Jefferson county, went together in the afternoon of the 27th November, 1898, to arrest the defendant, Will Golson, on a capias issued by the clerk of the circuit court of Autauga county, on an indictment against defendant in said court, directed to any sheriff of the State, which had come to the hands of the sheriff of Jefferson county for execution. Before they repaired to the house of defendant to arrest him, it appears, the deceased and his assistants came together at the sheriff's office in the court house. On cross-examination of Barker, by defendant, he was asked, "For what purpose did you go to the sheriff's office?" "What did you do there?"; and it further appearing that they stopped on their way to defendant's house, at Johnson's saloon, he was asked, "Did Mr. Warnock take anything to drink?", "What did Mr. Warnock do in the saloon?", "Did Mr. Warnock go into the saloon?" The same question, whether Warnock took a drink at the saloon, was asked the witness, Lowe, when crossed by defendant. On objections made by the solicitor to each of these questions as they were severally asked, the court refused to allow them to be answered, and in this there was no error. The answers were certainly immaterial.

2. The sheriff, O'Brien, testified to an interview he had with the defendant in the jail, after he was arrested, in which he made a confession which the court admitted in evidence, after preliminary statements by the witness to show that it was voluntarily made. He further tes-

tified, that a man by the name of Will Haggard, a news-paper reporter, chief of police, McDonald, and, he thought, deputy sheriff, Lowe, were present. The defendant asked the witness if Mr. Haggard had not published in a newspaper an account of this interview between the sheriff and defendant, and if witness had not read the interview. The purpose of these inquiries was not disclosed, and their immateriality, as for anything appearing, was patent.

3. McDonald, a witness for the State, testified, that he and Robert Patton arrested defendant on the 30 or 31 December, 1898, for killing Warnock; that when they first saw defendant, he was standing in a door of a house on the south side; that defendant went inside the house and closed the door behind him and ran out of the back door with his pistol in hand and fled; that witness went in the house and through the back door, and saw and fired at defendant as he was running away, and they pursued and captured him under a house. On the cross, the witness was asked by the defendant's counsel, how he came to approach the man standing by the door, and he replied, he was told it was Will Golson. Defendant's counsel then asked, —"Who told you it was Will Golson?", which question, on objection by the State, the court would not allow answered. There was no error here. It did not matter who told him, or, as for that matter, whether or not anybody had told him. The man he saw was certainly the defendant, for whom he was looking. And so, of the other cross-questions to this witness which were disallowed,—If there was not a large reward offered for the arrest of defendant, and if he did not get a considerable reward for arresting him? His answer one way or the other, had nothing to do with the case.

4. The rulings to which exceptions were taken, numbered by us as 11, 12, 13, and 14,—all relating to the exclusion of evidence—were so manifestly proper, we deem it unnecessary to notice them.

5. The door through which three shots were fired was exhibited to the jury. Middleton, qualifying as an expert, testified that in his opinion the shots were fired from the outside. McDonald also, examined by defend-

ant, testified to facts showing he had no expert knowledge on the subject, and stated that he was not an expert. He was asked by defendant, for his opinion, whether the person who fired the shots through the door, stood on its outside or inside. In the rejection of this evidence, the court did well. The witness knew no more about the matter than the persons composing the jury; and no more than any other ordinary person, not skilled as to the matter inquired about.

6. Miss Willie Leach testified, that she was near the Golson house,—about 60 or 65 feet away; that she heard a shot, and immediately ran into the alley in the rear, saw a negro man run out on the porch of the Golson house, who ran toward the upper end of the porch, when he turned round and fired at a man leaning against the end of the house; that he then ran down the alley and passed her with a pistol in his hand, and she knew him to be the man who lived at that house. She also testified, that when the man ran out of the door of the house onto the porch, a whole lot of smoke came out of the door when it was opened by him, and that shortly afterwards, she saw Mr. Warnock lying at the end of the porch where she saw the negro turn and fire his pistol. To rebut this witness' evidence, by way of showing she had sworn falsely or was mistaken, the defendant introduced Mrs. Waggoner, who testified, that being nearby she heard two shots in rapid succession towards the Golson house; that she ran to the alley, and after she had been there some time, she saw Willie Leach coming up going towards the Golson house; that when she first got to the alley, she did not see Miss Leach, but saw a man, woman and child, and no one except them was in the alley; that just as she got over the fence into the alley, she saw an old man they called the sheriff, drive up in a buggy. The State had Thos. Parker called in the court room, and she identified him as the man who drove up in the buggy. After the defendant closed his testimony, the State called Thos. Parker in rebuttal, who testified, that he was a deputy sheriff; that he was on 27th Street, when he heard Warnock was killed; that he ordered his buggy, but before it was ready, he walked to Sheriff O'Brien's house on 4th Street, to tell him of the

death of Warnock, and then returned and got his buggy and went to the scene of the killing, about thirty-five minutes after he heard of it. The defendant, thereupon, moved the court to exclude all the evidence of this witness, without stating any grounds therefor, which motion was overruled. The evidence was competent, and so far as appears there existed no reasons against its introduction or for its exclusion.

7. Charge 1 by defendant has been too often repudiated to require further attention.—*Bonner v. State*, 107 Ala. 98; *Thomas v. State, Ib*, 13; *Webb v. State*, 106 Ala. 53; *McKleroy v. State*, 77 Ala. 95. Charge 2 not only ignores the question of fault on defendant's part in bringing on the difficulty, but implies his fault. Charge 3 is vicious throughout, not only for what it contains, but for what it omits. No such warning as that hypothesized in the 4th charge was necessary to render the alleged confession admissible, and the charge was properly refused. Charges 5 and 6 were written on one and the same piece of paper and the presiding judge wrote across the paper, "Refused," and signed his name. In such case, each charge must be good, or the exception fails.—*Horn v. State*, 98 Ala. 24. Both of these charges, however, are bad in ignoring fault of the defendant in precipitating the difficulty. Charges 7, 8 and 9, were requested and disposed of, in the same manner as charges 5 and 6. Each of them is so manifestly bad, under the facts of the case, as to require no special comment. Charges 10 and 11 were asked and refused together as in the case of 5 and 6. Without reference to charge 10, whether it was a proper or an improper instruction, if charge 11 was erroneous, there was no error in refusing both. This latter charge manifestly asserts an incorrect proposition of law. The indictment charges murder in the first degree, and under it the defendant might have been convicted of murder either in the first or second degree, and of murder in the second degree, notwithstanding the deliberation and predemitation hypothesized in the charge were wanting.

There appears to be no error in the record and the judgment must be affirmed. The proper executive officer of the county of Jefferson will proceed, on Friday the

9th day of February, 1900, to execute the sentence of the lower court in all respects as provided by statute in such cases.

## *Indictment for Murder.*

